# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2386 | **DATE** | 12/8/2003 |
| **CASE TITLE** | Allen Tegtmeier vs. Midwest Operating Engineers Pension Trust Fund | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for summary judgment [17-1] is denied. Defendant's motion for summary judgment [13-1] is granted. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 0 9 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 27 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RO | courtroom deputy's initials | 03 DEC -8 PM 3:52 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALLEN TEGTMEIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 03 C 2386 |
| v. | ) |
| | ) Judge Ruben Castillo |
| MIDWEST OPERATING ENGINEERS | ) |
| PENSION TRUST FUND, | ) |
| | ) |
| Defendant. | ) |

DOCKETED
DEC 0 9 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Allen Tegtmeier sued his pension trust fund, Defendant Midwest Operating Engineers Pension Trust Fund ("MOE Pension Fund" or "Fund"), under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Tegtmeier seeks review of the Fund's decision not to consider the date he first applied for disability benefits for purposes of determining the monthly payments he must pay to the Midwest Operating Engineers Health and Welfare Trust Fund ("MOE Health and Welfare Fund"). Presently before this Court are Tegtmeier and MOE Pension Fund's motions for summary judgment, (R. 13-1, Def.'s Mot.; R. 17-1, Pl.'s Mot.) For the reasons set forth below, we deny Tegtmeier's motion, (R. 17-1), and grant MOE Pension Fund's motion, (R. 13-1).

## RELEVANT FACTS

The MOE Pension Fund is a joint labor-management trust fund established to provide pension benefits, including disability benefits, to its participants. The Fund is governed by the MOE Pension Fund's Plan, which is summarized in a Summary Plan Description. The Fund is administered by trustees who have "complete discretionary authority to construe, interpret, and

27

apply all of the terms of the Plan, including all matters relating to eligibility for benefits, amount, time or form of payment, and any disputed or allegedly doubtful terms." (R. 21, Pl.'s Resp. ¶¶ 1-4.)

Tegtmeier, as a member of the International Union of Operating Engineers Local 150, is a participant in the MOE Pension Fund. On July 12, 2001, Tegtmeier injured his back while working and was diagnosed with low-back pain and internal derangement with lumbar radiculopathy. (R. 22, Def.'s Resp. ¶¶ 15-16.) As a result of this injury, Tegtmeier applied for benefits from the MOE Pension Fund, the MOE Health and Welfare Fund and the Social Security Administration. He immediately began collecting disability benefits from the MOE Health and Welfare Fund.[1] His applications for disability benefits with the MOE Pension Fund and the Social Security Administration, however, were not immediately granted and form the basis of the present dispute.

The MOE Pension Fund provides disability benefits to eligible participants who become "totally and permanently disabled."[2] (*Id.* ¶ 9.) On November 30, 2002, Tegtmeier faxed his disability application to the MOE Pension Fund.[3] (R. 19, Pl.'s App. at 7.) On January 25, 2002,

---

[1] The Health and Welfare Fund provides benefits to participants who become "totally disabled" which it defines as "[t]he inability of an Employee to perform any of the duties of his or her occupation or any occupation as a result of a non-occupational Illness or Injury, or, subject to the subrogation provisions of the Plan set forth in Article 17, an occupational Illness or Injury." (R. 22, Def.'s Resp. ¶ 11.)

[2] The MOE Pension Plan defines a "total and permanent disability" as "[a] physical or mental condition of a Participant which the Trustees find on the basis of medical evidence to totally and permanently prevent such Participant from engaging in employment." (R. 22, Def.'s Resp. ¶ 9.)

[3] The MOE Pension Plan provides that:

2

the Fund's Pension Department sent him a letter requesting that he provide them with a medical examiner's report by March 11, 2002. (*Id.* at 17.) On February 22, 2002, Tegtmeier called the Pension Department, spoke to an "unidentified reviewer" and requested that the Fund postpone his application. (R. 22, Def.'s Resp. ¶ 38.) The reviewer asked Tegtmeier to put his request in writing, so four days later Tegtmeier sent a letter to Judith Kot, the Pension Fund Manager, stating:

> Please put my application for disability pension on hold. As of this date, I have not had my surgery. I've been advised even with as [sic] successful procedure, I should not return to operation of rough riding Heavy. Equip., ie. Dozer's-Earthmovers Loader's etc. [sic] My situation is still uncertin [sic] and at this time I feel this is in my best interest.

(R. 19, Pl.'s App. at 21.) Despite this letter, Kot sent Tegtmeier a letter on May 2, 2002 informing him that he had until June 16, 2002 to provide the Fund with "updated notes for visits from January 2002 and onward." (*Id.* at 24.) In response to this letter, Tegtmeier sent a letter on May 5, 2002 stating:

---

> Unless special circumstance exist, a Participant shall be informed of the Trustees' decision on his claim within 90 days of the date the claim is received, whether or not all the information and evidence necessary to process the claim is received. Within such 90-day period, the Participant shall receive the Administrative Manager's decision or a notice that:
>
> > (i) explains the special circumstances requiring a delay in the decision; and
> > (ii) sets a date, no later than 180 days after his claim has been received, by which he can expect to receive a decision.
>
> The Participant may assume that his claim has been denied and may proceed to appeal the denial if the Participant does not receive any notice from the Administrative Manager within the 90-day period.

(R. 21, Pl.'s Resp. ¶ 21.)

> Enclosed is the form for release of medical records. My surgery is scheduled for <u>May 29</u>. I would like to have another extension of at least 45 days or more. Surgical recouperation [sic] is from 2-4 months.

(*Id.* at 25.) On July 12, 2002, Kot sent Tegtmeier a second application for disability benefits.

(*Id.* at 28.) He completed this application and filed it on July 30, 2002. (*Id.* at 36.) On July 31, 2002, Tegtmeier sent a letter to the Pension Fund stating, in relevant part:

> I hereby request that my initial application for disability dated Nov. 01 be still in affect [sic]. . . . I had no idea the importance of maintaining this Nov. 01 date due to Program changes, ie. effects, after wards [sic]. I believe I was not completely informed and actually was vaguelly [sic] mislead [sic].

(*Id.* at 35.)

On August 29, 2002, the Pension Fund's Review Board approved Tegtmeier's application for disability benefits and denied his request to consider the date of his first application for purposes of determining the monthly payments he must make to receive retirement welfare benefits under the MOE Health and Welfare Fund.[4] (*Id.* at 78.) The Review Board explained that they denied his request because:

> You [Tegtmeier] put your pension application on hold in February 2002 and then notified the Fund in May 2002 that you were not ready to apply for pension. The Fund closed the application process and requested that you submit a new application when you were ready to pursue it.

(*Id.*)

Tegtmeier appealed the Fund's Review Board's decision, and the Appeal Review Panel denied his appeal stating that it "did not find that a compelling reason was presented as to why

---

[4] Tegtmeier made this request because of a recent change to the MOE Health and Welfare Fund's Plan. The change increased Tegtmeier's monthly payments to the Health and Welfare Fund by $282, but if Tegtmeier received his disability pension before January 1, 2002 these monthly payments would not have increased.

you put your pension application on hold in February 2002." (*Id.* at 74, 95.) Tegtmeier then requested a rehearing, and the Review Board once again denied his claim stating that its decision was "final, conclusive and binding" and explaining, in relevant part, that:

> the Review Panel believes it was reasonable and legally necessary to treat Mr. Tegtmeier's July 2002 application as a new application since the first application had been stopped, more than 90 days had passed since the first application, and it is unknown whether Mr. Tegtmeier's first application for benefits would have been approved prior to his surgery.

(*Id.* at 96, 119-20.)

Tegtmeier attempted to reopen his claim after the Social Security Administration found that he was unable to perform substantial gainful activity as of July 12, 2001. (R. 22, Def.'s Resp. ¶¶ 65-66.) The Fund's Review Panel denied his request explaining that "Tegtmeier has exhausted the appeal process under the terms of the Pension Plan" and that "the decision states that it is final." (R. 19, Pl.'s App. at 142.) Tegtmeier then sued the Pension Fund under ERISA.

## LEGAL STANDARDS

Summary judgment is proper only when the record indicates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To avoid summary judgment, the nonmoving party must advance "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence, however, must raise more than a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When both parties move for summary judgment, the court will "look to the burden of proof that each party would bear on an issue at

trial" and "require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## ANALYSIS

A trustee's denial of benefits is reviewed *de novo* except when the plan confers discretionary authority on the trustee to determine benefit eligibility. *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 773 (7th Cir. 2003) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989)). Both parties agree that the MOE Pension Fund's trustees had complete discretionary authority to determine disability benefit eligibility. Accordingly, we will review the trustees' denial of benefits under the arbitrary and capricious standard.

The arbitrary and capricious standard of review is deferential to trustees' decisions. *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001). The trustees' decision will not be overturned so long as:

> (1) "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome," (2) the decision "is based on a reasonable interpretation of relevant plan documents," or (3) the [trustees] "[] based [their] decision on a consideration of the relevant factors that encompass the important aspects of the problem."

*Id.* (quoting *Exbom v. Central States, S.E., and S.W. Areas Health and Welfare Fund*, 900 F.2d 1138, 1142-43 (7th Cir. 1990)). Review is limited to the information submitted to them, *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 982 (7th Cir. 1999), and included in the record at the time they issued their final decision, *see Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997). Therefore, we will uphold the trustees'

decision unless we find that it was "downright unreasonable." *Carr v. Gates Health Care Plan*, 195 F.3d 292, 294 (7th Cir. 1999) (internal citations and quotations omitted).

The MOE Pension Fund contends that its decision to deny Tegtmeier's request for retroactive application of his disability benefits was reasonable because it adhered to MOE Pension Fund procedures. The Fund further asserts that it thoroughly considered Tegtmeier's request and provided him with a written statement explaining why it was denied. Tegtmeier counters that their decision was arbitrary and capricious because: (1) the MOE Pension Fund's trustees breached their fiduciary duties by (a) failing to inform him of the consequences of putting his application on hold and (b) adjudicating his claim in an adversarial fashion; and (2) it is inconsistent with a previous determination that Tegtmeier was entitled to weekly disability benefits. Tegtmeier also claims that the trustees' decision not to reopen his claim to consider a favorable Social Security Administration decision was arbitrary and capricious.

## I. The Pension Fund's Decisions

Tegtmeier challenges two decisions made by the MOE Pension Fund's trustees: (1) their denial of his request to consider the date of his first application for purposes of determining the monthly payments he must make to receive retirement welfare benefits under the MOE Health and Welfare Fund; and (2) their refusal to reopen his claim to consider a favorable Social Security Administration decision. For the reasons provided below, we find that both of these decisions were reasonable since they are consistent with the MOE Pension Fund's procedures.

First, the MOE Pension Fund's trustees' decision not to consider the date of Tegtmeier's first application for purposes of determining Tegtmeier's monthly MOE Health and Welfare Fund payments was reasonable. The Fund's trustees provided three reasons why his request was

7

denied: (1) his first application was "stopped;" (2) 90 days had passed since he filed his first application; and (3) it was unknown whether his first application would have been approved.

We find that it was reasonable for the Fund to refuse to consider his first application after he submitted his second application. First, Tegtmeier requested that his application be put on hold. Additionally, instead of submitting the medical information requested in the Fund's May 2, 2002 letter, he requested an additional forty-five day extension. By requesting additional time, Tegtmeier was aware that his request to put his application on hold was unsuccessful. Finally, Tegtmeier filed a second application, which is an implicit acknowledgment that his first application was no longer active. Given these facts, we find that it was reasonable for the Fund to stop his first application.

Additionally, the Fund closed his first application more than 180 days after it was filed. Pension Plan procedures require that the trustees render a decision within 90 days, regardless of whether they have received all the necessary evidence and information, or within 180 days if special circumstances exist. He filed his first application on November 30, 2001, and the Pension Fund gave him until June 16, 2002, more than 180 days later, to provide all the requested information. Finally, Tegtmeier acknowledged in his February 26, 2002 letter that his "situation is still uncertin [sic]." Thus, we find that the MOE Pension Fund's trustees' decision not to consider the date of Tegtmeier's first application for any purpose was reasonable. Accordingly, we uphold the trustees' decision. *See Carr*, 195 F.3d at 294.

The Fund's decision not to reopen his claim was also reasonable. A Social Security Administration disability determination is not conclusive of a participant's qualification for ERISA disability benefits, *see Donato v. Metro. Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir. 1994);

however, a trust fund should consider a Social Security disability determination when a participant submits one. *Reipsa v. Metro. Life Ins. Co.*, No. 01 C 3407, 2002 U.S. Dist. LEXIS 13188, at *16-25 (N.D. Ill. June 11, 2002). Tegtmeier, unfortunately, did not receive his favorable Social Security Administration disability determination until after he had exhausted the Fund's appeal process. Nonetheless, it was reasonable for the trustees not to reopen his claim to consider the Social Security Administration decision. Requiring the Fund to reopen a claim to accommodate a Social Security Administration decision would undermine the Fund's written Plan because the Plan provides that after a rehearing the Review Panel's decision "shall be final, conclusive and binding upon the Participant and all other persons." (R. 21, Pl.'s Resp. ¶ 21.) *See Admin. Comm. of Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan v. Varco*, 338 F.3d 680, 691 (7th Cir. 2003) (stating that one of the purposes of ERISA is to ensure the integrity of written plans). Additionally, the trustees' decision is reviewed with respect to the information available at the time they rendered their final decision. *Perlman*, 195 F.3d at 982; *see also Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 458 (6th Cir. 2003) (finding that a district court erred when it considered an email received after the plan rendered a final decision). The trustees' decision not to reopen Tegtmeier's claim was consistent with its written Plan. Accordingly, we uphold the trustees' decision. *See Carr*, 195 F.3d at 294.

## II. Breach of Fiduciary Duties

Tegtmeier also claims that the trustees acted arbitrarily and capriciously because they breached their fiduciary duties to him by failing to inform him of the consequences of putting his application on hold. Bad faith by a trustee constitutes a breach of fiduciary duty and arbitrary and capricious decision-making. *Allison v. Dugan*, 951 F.2d 828, 833 (7th Cir. 1992).

9

Misleading a participant or misrepresenting a pension plan provision will constitute a breach of fiduciary duty, *see Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 591 (7th Cir. 2000); *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 991 (7th Cir. 1993), but a negligent misrepresentation made by a ministerial employee will not when the plan itself provides complete and correct information. *Schmidt v. Sheet Workers' Nat'l Pension Fund*, 128 F.3d 541, 547 (7th Cir. 1997).

It is undisputed that Tegtmeier requested that his claim be placed on hold, but it is unclear if anyone affirmatively told Tegtmeier that he could place his application on hold. Despite this uncertainty, we find that this case is controlled by *Schmidt* and that the Pension Fund did not breach a fiduciary duty. First, any misrepresentation would have been made by a ministerial employee: either an "unidentified reviewer" or by Judith Kot, the Pension Department Manager.[5] Neither of these people are fiduciaries as they do not "exercise a degree of discretion over the management of the plan or its assets." *Schmidt*, 128 F.3d at 547. Second, the misrepresentation could only be described as negligent. Indeed, Tegtmeier's own letter states that he was vaguely misled. Tegtmeier had not shown that someone intentionally misrepresented the effect of placing his application on hold. Instead, Tegtmeier argues that "not even the individuals employed by [the MOE Pension Fund] with whom Tegtmeier spoke were aware of the effect of the postponement." (R. 17, Pl.'s Mem. at 9.) Finally, the Fund's Plan provides that a claim will be decided within 180 days of the date the claim is filed "whether or not all the information and evidence necessary to process the claim is received." Thus, the trustees provided Tegtmeier with

---

[5] It is also worth noting that Tegtmeier was aware, when he received a request to submit updated information within 45 days, that his attempt to place his claim on hold was unsuccessful.

10

complete and correct information. Accordingly, the MOE Pension Fund did not breach a fiduciary duty by failing to inform Tegtmeier of the consequences of putting his application on hold.

Tegtmeier also contends that he was not provided with complete and correct information because the Summary Plan Description did not explain the consequences of placing his application on hold. Summary plan descriptions "must list the circumstances in which disqualification, ineligibility, denial, or loss of benefits may occur." *Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1021 (7th Cir. 1998) (citing 29 U.S.C. § 1022(b); 29 C.F.R. 2520.102-3)). A summary plan description, however, need not contain information on every possible idiosyncratic contingency that could affect a particular participant's status. *Lorenzen v. Employees Ret. Plan of Sperry & Hutchinson Co.*, 896 F.2d 228, 236 (7th Cir. 1990) (holding that the summary plan description was not required to advise participants of consequences of finding themselves on life support machinery before retirement); *but see Bowerman*, 226 F.3d at 590-91 (summary plan description's failure to explain relationship between COBRA coverage and regular coverage for employees who left company and then returned shortly thereafter required reversal of denial of benefits).

Although Tegtmeier seeks to analogize this case to *Bowerman*, the facts of this case are more consistent with *Lorenzen*. Tegtmeier suggests that the Summary Plan Description should have apprised him of the risk of placing a disability application on hold for several months pending the outcome of surgery. Such a situation, however, seems peculiar to Tegtmeier's case. Since weekly disability benefits are available for fifty-two weeks, it will rarely be the situation that someone will apply for total and permanent disability benefits prior to knowing the outcome

11

of a future surgery. In fact, allowing participants to apply for total and permanent disability benefits before knowing the outcome of a potentially healing surgery is counterintuitive to the principle of "permanent disability." Since this situation was unique to Tegtmeier, as being placed on life support before retirement was unique to the participant in *Lorenzen*, the Summary Plan Description did not need to contain information on the effect of suspending an application for disability benefits pending surgery.

Finally, Tegtmeier claims that the trustees breached their fiduciary duties to him by adjudicating his claim in an adversarial manner. In support of his argument, he alleges that the trustees failed to consider new evidence, reached unsupported conclusions and ultimately denied his claim. As we have already found that the trustees' decision were reasonable, we reject Tegtmeier's argument that the trustees adjudicated his claim in an adversarial manner.

## III. Inconsistent Disability Determinations

Tegtmeier also asserts that *Reich v. Ladish Co.*, 306 F.3d 519 (7th Cir. 2002), establishes that the trustees must find him disabled because he was found disabled under the MOE Health and Welfare Fund. The MOE Health and Welfare Fund is distinct from the MOE Pension Fund; it provides different benefits and is governed by a different plan document. The *Reich* court held that trustees cannot give the same term two different definitions within the same plan. *Reich*, 306 F.3d at 524. Tegtmeier's argument is unavailing because he is relying on different terms in different plans. Under the Health and Welfare Fund, trustees may grant weekly disability benefits upon a finding of "total disability," which is defined as "[t]he inability of an employee to perform any of the duties of his or her occupation or any occupation." But under the MOE Pension Fund, the trustees may grant disability benefits upon a finding of "total and

12

permanent disability," which is defined as "[a] physical or mental condition of a Participant which the Trustees find on the basis of Medical evidence to totally and permanently prevent such participant from engaging in employment." Therefore, a finding of total disability under the MOE Health and Welfare Fund does not mandate a finding of total and permanent disability under the MOE Pension Fund.

The only wrinkle in this case is that the MOE Pension Fund's Review Panel relied on the Health and Welfare Fund "total disability" definition when explaining why Tegtmeier may not have been found to be disabled in November 2001. This error, while indicative that the Review Panel was not completely thorough or accurate, does not persuade this Court that their refusal to consider the date of Tegtmeier's first application was arbitrary or capricious.

## CONCLUSION

For the reasons stated above, we deny Plaintiff Tegtmeier's motion for summary judgment, (R. 17-1), and grant Defendant MOE Pension Fund's motion for summary judgment, (R. 13-1). While we sympathize with the unfortunate chain of events that led to the increased monthly payments required of Tegtmeier under the MOE Welfare and Health Fund, we find that the trustees' decisions were reasonable and not in violation of their fiduciary duties. The Clerk of the Court is instructed, pursuant to Federal Rule of Civil Procedure 58, to enter judgment in favor of Defendant MOE Pension Fund and against Plaintiff Tegtmeier.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: December 8, 2003

13